Bruce L. Mowery, OSB #73216
*bmowery@cciservices.com*
280 Liberty St. SE, Ste 206
Salem, OR  97301
   Telephone:  (503) 480-7251
   Fax: (503) 779-2716

   Attorney for Defendants


IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


JOHN TAYLOR,                                                    Case No. 06-6283-HO

                              Plaintiff,

      v.                                                 **DEFENDANTS' CONCISE
                                                    STATEMENT OF MATERIAL FACTS
KEIZER POLICE DEPARTMENT, an                         IN SUPPORT OF DEFENDANTS'
instrumentality or department of the City of           MOTION FOR SUMMARY
Keizer, JEFFREY JOHNSON, JEFFREY K.                          JUDGMENT**
GOODMAN, and CITY OF KEIZER, a
municipality of the State of Oregon,

                              Defendants.
_____


      1.      Officer Johnson has been employed by the City for more than 15 years.  He

attended State of Oregon Department of Public Safety Standards and Training (DPSST) academy

in Monmouth, Oregon in 1991.  (Johnson Decl. ¶ 1).  Johnson earned intermediate and advanced

certificates in 2001.  (Johnson Decl. ¶ 2).

      2.      Officer Goodman was a deputy with the Linn County Sheriff's Office from 1994

to 1998 when he became employed by the Keizer Police Department as a police officer.  Officer

Goodman earned his basic and intermediate certification from the DPSST in 1996 and earned his advanced certification in 1999.  (Goodman Decl. ¶ 1-2).

3.    As Keizer police officers Johnson and Goodman have had additional training over the years.  The curriculum of the training varies.  (Johnson Decl. ¶ 2; Goodman Decl. ¶ 3).

4.    On September 18, 2004 at 3:39 p.m. Johnson and Goodman were on patrol in their marked patrol vehicles when they responded to a report of an armed robbery that had just occurred, several blocks away.  Dispatch reported that a white adult male in his mid-30's, 5' 8" tall with a medium build wearing a brown leather jacket and black pants had robbed the Best Buy Food Mart at gunpoint.  That crime would constitute a felony.  (Johnson Decl. ¶ 3; Goodman Decl. ¶ 4).

5.    The suspect robbing the Best Buy had obtained cash and had fled the store on foot southbound on River Road North ("River Road").  Best Buy is on the west side of River Road. (Johnson Decl. ¶ 4).

6.    In responding to the call the officers traveled east on Dearborn Avenue, approaching River Road at a high rate of speed in their separate patrol cars.  Johnson observed a male standing at the Northeast corner of River Road and Dearborn Avenue, about one block south of the Best Buy where the armed robbery occurred.  (Johnson Decl. ¶ 5).

7.    That individual, later identified as John Taylor, the plaintiff, matched the description of the suspect.  The plaintiff was about 5' 8", medium build and wearing a brown leather jacket and black pants.  He had a plastic bag containing something in one of his hands. Its contents were not identifiable.  The plastic bag appeared heavy as it was stretched.  Officer Johnson believed the bag might contain a weapon.  The plaintiff was the only pedestrian

Page 2 – **DEFENDANTS' CONCISE STATEMENT OF MATERIAL FACTS IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

observed in the area. As Johnson approached in his patrol car, the suspect turned away to the west and placed a hand in his pocket, possibly for a weapon, the gun used in the robbery. (Johnson Decl. ¶ 6).

8.    Officer Goodman was following Officer Johnson's patrol vehicle when he heard Johnson radio that he observed the suspect and brought his vehicle to a stop. Goodman drove to Officer Johnson's right and came up over the curb. Goodman's emergency overhead lights were activated as he drove up over the curb and based upon his observation of the plaintiff, it appeared that plaintiff was aware of their presence. (Goodman Decl. ¶ 5).

9.    Plaintiff appeared to look towards the officers and then turned west taking one or two steps as though to cross River Road. Goodman thought plaintiff was going to flee and that the officers would have to chase him. Officer Johnson gave verbal commands and Goodman approached with his weapon at "low ready" (at a 45 degree angle to the ground) giving additional commands. Plaintiff turned to look at the officers and got down on the ground. (Goodman Decl. ¶ 6).

10.    Plaintiff admits he was wearing black pants and a brown leather coat and was carrying a bag as he walked south along River Road. (Pltf. Dep. 80-82, Ex. G to Mowery Decl.).

11.    In getting on the ground plaintiff placed the bag under his face. (Johnson Decl. ¶ 7).

12.    As the officers approached, the plaintiff began to get back up and Johnson placed his foot on the middle of plaintiff's back commanding him to remain on the ground. (Johnson Decl. ¶ 8; Pltf. Dep. 89, Ex. G to Mowery Decl.)

13.    The plaintiff had, inexplicably, placed the plastic bag under his head and Johnson

was unable to identify what the contents were to ascertain if the bag contained weapons, perhaps the gun used in the robbery.  The officers had given plaintiff commands including an instruction that he was not to move.  (Johnson Decl. ¶ 9).

14.    The bag with its undisclosed contents added more of a threat than if there had been no bag. (Goodman Decl. ¶ 7).

15.    It would have been improper to cause confusion by giving contradictory commands like asking plaintiff to move his head or hand the bag to the officers or move it to the side.  Not wanting to lean down too close, Johnson used the side of his right foot to sweep the bag aside to his (Johnson's) left clearing it away from the suspect.  (Johnson Decl. ¶ 9; Goodman Decl. ¶ 7).

16.    The purpose was to remove the bag for officer safety reasons, not to inflict harm. During the sweep the sole of Johnson's right foot was in contact with the ground.  Johnson cannot say that the top of his shoe did not brush plaintiff's left eyebrow area however.  (Johnson Decl. ¶ 9).  Plaintiff states there was contact with his left eyebrow area (Pltf. Dep. 91, Ex. G to Mowery Decl.).

17.    Officer Goodman handcuffed the plaintiff and patted him down for weapons finding a box cutter and pocket knife.  Plaintiff was moved out of the street and seated in Johnson's patrol car for safety and security reasons.  (Johnson Decl. ¶ 10).

18.    The officers obtained plaintiff's identification and plaintiff explained he was walking home from Walgreens which is located a short distance to the North on River Road. Johnson explained that plaintiff matched the description they had been given of a suspect in a criminal act that had just occurred.  (Johnson Decl. ¶ 11).

19.     The officers communicated to dispatch the plaintiff's name and identifying features and learned that there were no warrants for his arrest.  Johnson and Goodman arranged to have another officer contact the victim at Best Buy and transport her to their location to identify the plaintiff.  The victim then advised that the person committing the robbery was a little younger than plaintiff.  (Johnson Decl. ¶ 12).

20.     After the robbery victim identified the plaintiff as not being the suspect, plaintiff was immediately uncuffed and the situation was again explained to him by Johnson.  Plaintiff stated he understood and that his only complaint was that his eye glasses were bent.  (Johnson Decl. ¶ 13).  Officer Goodman observed seeing plaintiff's glasses on his face bent slightly. There were no marks on plaintiff's face and at no time did the plaintiff complain of pain or injury.  (Goodman Decl. ¶ 7).

21.     Johnson drove plaintiff to his optometrist's office a short distance away but the office was closed.  This was on a Saturday.  Johnson then drove plaintiff to his residence and gave him his business card.  En route plaintiff admitted that he matched the physical description of the suspect as given by dispatch.  Plaintiff had no visible injury and complained of none. (Johnson Decl. ¶ 14).  Plaintiff had no bleeding and did not request medical care (Pltf. Dep. 109, Ex. G to Mowery Decl.).  Plaintiff deposed that he had a "knot" over the left eyebrow that lasted "maybe" a couple of days and which "maybe" was a little discolored the evening of the incident (Pltf. Dep. 109, 112, Ex. G to Mowery Decl.).

22.     Officer Johnson was unaware of any prior contacts with the plaintiff.  (Johnson Decl. ¶ 15).  Plaintiff did not know either officer and had no reason to believe they had targeted him for inappropriate treatment (Pltf. Dep. 84-85, Ex. G to Mowery Decl.).

23.     One of the patrol cars was equipped with video and the incident was recorded. There was a time display.  The time elapsed from the time plaintiff was commanded to get down on the ground to the time that the officers assisted him up after being cuffed was less than one minute and that is consistent with Johnson's memory.  Officer Goodman is the officer that can be seen positioning himself near the plaintiff's feet.  It is a little less than 6 minutes after plaintiff's stop that the officers received a report through dispatch that there were no outstanding warrants for plaintiff's arrest.  It was approximately 8 minutes after plaintiff was commanded to get down on the ground that the robbery victim was transported to the scene and reported that the plaintiff was not the suspect.  It was slightly less than 10 minutes after the stop that the officers radioed dispatch to state that they were giving plaintiff a ride.  (Johnson Decl. ¶ 16).

24.     A true copy of the video was provided to defense counsel Bruce L. Mowery. (Johnson Decl. ¶ 17).

25.     In all, the investigatory stop was just slightly less than 10 minutes in duration. During this time the officers patted him down for weapons, radioed his identification to dispatch and received a response and waited for transport of the crime victim to the scene so that she could ID the plaintiff.  (Johnson Decl. ¶ 18).  Plaintiff estimates his detention at five minutes (Pltf. Dep. 99, Ex. G to Mowery Decl.).

26.     Plaintiff is not making a claim for being stopped nor is he making a claim for the officer placing his foot on his back.  His only claim is for being "kicked" (Pltf. Dep. 143, Ex. G to Mowery Decl.).

27.     After taking plaintiff home Officer Johnson returned to the Best Buy crime scene where the armed robbery had occurred.  Through additional questioning the victim, Lai Linh

Saetern, elaborated on the suspect's description; that his black pants had cargo pockets, that he had short dark hair and was unshaven.  Plaintiff had dark hair but was partially bald.  The plaintiff had a mustache whereas the victim, on close questioning, thought the suspect had a goatee.  At the outset dispatch said nothing regarding the suspect's hair or whether he was clean shaven.  (Johnson Decl. ¶ 19).

28.    Prior to September 18, 2004 the officers had had training and education regarding the law as it relates to investigatory stops, probable cause, authority to arrest, use of force and the civil liability that can attach to both individual law enforcement officers and the law enforcement agency.  (Johnson Decl. ¶ 20; Goodman Decl. ¶ 8).

29.    The two officers were well-acquainted with the penal code portion of the Oregon Statutes particularly with respect to the elements of various crimes including robbery.  They had received training and education regarding the policy of the Keizer Police Department that it is the fundamental duty of every member of the department to observe, respect and protect the constitutional rights of every citizen.  (Johnson Decl. ¶ 21; Goodman Decl. ¶ 9).

30.    All officers are subject to supervision to ensure that the department policies and procedures are followed.  At the time of the September 18, 2004 incident there were policies and procedures prohibiting the commission of an unlawful seizure or detention and prohibiting the use of excessive force.  The policies and procedures prohibited violations of local, state or federal criminal or civil codes or ordinances by department officers.  Policies and procedures prohibited officers from failing to protect civil rights of a citizen when such need was known or would have been known by a competent officer.  (Johnson Decl. ¶ 22; Goodman Decl. ¶ 10).

31.     At the time of the subject incident it was understood that violation of the policies of the department would be regarded as a serious matter that would be thoroughly investigated and that sanctions could and would be used to correct and prevent the reoccurrence of any violation of department policy up to and including termination of employment.  (Johnson Decl. ¶ 23; Goodman Decl. ¶ 11).

DATED this 11th day of June, 2007.

_/s/ Bruce L.  Mowery_____
BRUCE L. MOWERY
OSB #73216
503-480-7251
Attorney for Defendants